FILED
COURT OF APPEALS
DIVISION II

2015 FEB 18 AM 9: 17

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45432-7-II |
| Respondent, | |
| v. | |
| CHRISTOPHER ROY SMITH, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Following a bench trial, the trial court found Christopher Roy Smith guilty of failure to register as a sex offender.[1] Smith appeals his conviction, asserting that the sex offender registration statute, RCW 9A.44.130, is unconstitutional on its face and as applied to him because the statute is overbroad and burdens his fundamental right to travel. Smith also asserts that the State failed to present sufficient evidence to support his conviction. Because the sex offender registration statute is constitutional and sufficient evidence supports Smith's conviction, we affirm.

## FACTS

Smith has previously been convicted of a sex offense, which conviction required Smith to register his residence under RCW 9A.44.130. Smith registered his Longview, Washington residence with the Cowlitz County Sheriff's Office in December 2006. In November 2011, the sheriff's office received a letter signed by Smith stating that he was providing notice of his

---

[1] RCW 9A.44.132 criminalizes a convicted sex offender's failure to comply with the registration requirements of RCW 9A.44.130.

change of address from a location on Rose Place in Longview to a location on 9th Avenue in Longview. The sheriff's office sex offender registration clerk, Kristine Taff, completed a change of address form for Smith after receiving the letter.

On March 8, 2012, Longview Police Department investigator Olga Lozano went to the 9th Avenue address to verify that Smith was living at his registered residence. When Lozano arrived at the 9th Avenue address, she saw that the house was vacant and that a rental sign was placed in front of the house. Based on Lozano's investigation, the State charged Smith with failure to register as a sex offender.

At the bench trial, Taff testified that there are two ways in which an offender may register a change of address, either by coming to the sheriff's office in person or by sending a signed and dated "certified return receipt requested letter that includes their old address and their new address." Report of Proceedings at 16. On cross-examination, Taff testified that she informs every offender that he or she must submit a certified return receipt letter in order to register a change of address by mail. She further testified on cross-examination that she registered Smith's change of address after the sheriff's office received his November 2011 letter.

Lozano testified that she contacted the Cowlitz County Sheriff's Office after finding that Smith was not residing at his registered address on 9th Avenue. Lozano did not testify that she went to Smith's prior address on Rose Place to see if he still resided there.

Troy Savelli, the property manager of the 9th Avenue house, testified that someone named Aaron Weatherly had rented the 9th Avenue house in November 2011. Savelli also testified that Smith was not on the lease and was not permitted to reside at the house. Savelli further testified that, although Smith was not permitted to reside at the house, he had seen Smith

2

at the house on a few occasions. Savelli stated that Weatherly and Smith vacated the property in December 2011, after he evicted them for failing to pay rent. Savelli also stated that the house remained vacant from December 2011 until March 28, 2012, the date he rented it to a different tenant.

The trial court found Smith guilty of failure to register as a sex offender and later entered the following findings of fact and conclusions of law:

### Findings of Fact

1. On December 14, 2006, based upon a conviction for a sex offense, the Defendant registered with the Cowlitz County Sheriff's Office (CCSO) as a sex offender.

2. On November 10, 2011, the CCSO received a certified letter from the Defendant. The letter informed CCSO that the Defendant was changing his registered address from 2240 Rose Place, Longview, WA to 1111 9th Ave, Longview, WA. The letter was signed by the Defendant.

3. The CCSO permits people to update their registered address through certified mail. Upon receipt of such a mail, the CCSO will create a new Change of Address Form and update their file.

4. On March 8, 2012, Longview Police Investigator Olga Lozano attempted to verify the Defendant's address at 1111 9th Ave, Longview, WA. Upon arrival, Inspector Lozano observed that the residence was vacant and a "Troy/Arrow" rental sign was posted in the front.

5. Inspector Lozano contacted Troy Savelli, a property manager with Arrow Property Management, and learned that the house had been rented to Aaron Michelle Weatherly. Ms. Weatherly was the girlfriend of the Defendant. Inspector Lozano further learned that Ms. Weatherly had been evicted from 1111 9th Ave, Longview, WA around December 24, 2011.

6. Mr. Savelli had personal contact with the Defendant, both in person and on the phone while Ms. Weatherly resided at 1111 9th Ave, Longview, WA. Mr. Savelli had seen the Defendant while performing maintenance at the residence. Mr. Savelli spoke with the Defendant when he called the residence to discuss their delinquent rent payments.

7. According to Mr. Savelli's records, no one resided at 1111 9th Ave, Longview, WA from the end of December, 2011 to March 28, 2012. The residence was vacant during that time period.

8. On March 13, 2012, Inspector Lozano confirmed with the CCSO that the Defendant's last registered address was 1111 9th Ave, Longview, WA.

9. On April 10, 2012, Inspector Lozano requested a bench warrant be issued for the Defendant's arrest. On May 5, 2012, the Defendant was arrested on the bench warrant.

**Conclusions of Law**

1. The Defendant was required to register as a sex offender.

2. Between December 24, 2011 and March 8, 2012, the Defendant was registered as a sex offender with the Cowlitz County Sheriff's Office.

3. The letter received by the Cowlitz County Sheriff Office on November 10, 2011 was sent by the Defendant. When comparing the signature on the letter with the registration documents previously signed by the Defendant, it is clear that the letter was written and signed by the Defendant.

4. The Defendant changed his address from 2240 Rose Place, Longview, WA to 1111 9th Ave, Longview, WA.

5. The Defendant and his girlfriend, Aaron Michelle Weatherly, were evicted from 1111 9th Ave, Longview, WA on or around December 24, 2011.

6. The Defendant was not residing at 1111 9th Ave, Longview, WA from on or around December 24, 2011 through March 8, 2012.

7. The Defendant failed to notify the Cowlitz County Sheriff's Office within three business days after moving from 1111 9th Ave, Longview, Washington.

8. The Defendant is guilty of failing to register as a sex offender.

Clerk's Papers (CP) at 40-42. Smith appeals his conviction.

ANALYSIS

I. CONSTITUTIONALITY OF RCW 9A.44.130

Smith first contends that we must reverse his failure to register as a sex offender conviction because the sex offender registration statute, RCW 9A.44.130,[2] is unconstitutional on its face and as applied to him. Specifically, Smith contends that the statute is unconstitutionally broad and burdens his fundamental right to travel and right to freedom of movement. We disagree.

---

[2] RCW 9A.44.132(1) provides that "[a] person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of RCW 9A.44.130."

No. 45432-7-II

We review the constitutionality of a statute de novo. *State v. Enquist*, 163 Wn. App. 41, 45, 256 P.3d 1277 (2011). To demonstrate that RCW 9A.44.130 is unconstitutional on its face, Smith must show that "no set of circumstances exists in which the statute, as currently written, can be constitutionally applied." *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). A statute that is unconstitutional on its face is rendered "totally inoperative." *Moore*, 151 Wn.2d at 669. To demonstrate that RCW 9A.44.130 is unconstitutional as applied to him, Smith must show that "application of the statute in the specific context of the party's actions or intended actions is unconstitutional." *Moore*, 151 Wn.2d at 669. In contrast with a statute that is unconstitutional on its face, a statute that is unconstitutional as applied prohibits only "future application of the statute in a similar context, but the statute is not totally invalidated." *Moore*, 151 Wn.2d at 669. To succeed in his claim under either standard, Smith must show that RCW 9A.44.130 impairs a constitutional right. Smith asserts that the statute impairs the constitutional right to travel.

"The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment" of the United States Constitution. *Kent v. Dulles*, 357 U.S. 116, 125, 78 S. Ct. 1113, 2 L. Ed. 2d 1204 (1958). The right to travel includes the right to travel within a state. *City of Seattle v. McConahy*, 86 Wn. App. 557, 571, 937 P.2d 1133 (1997). The United States Constitution also protects an adult's fundamental right to freedom of movement. *State v. J.D.*, 86 Wn. App. 501, 506, 937 P.2d 630 (1997) (quoting *Aptheker v. Sec. of State*, 378 U.S. 500, 520, 84 S. Ct. 1659, 12 L. Ed. 2d 992 (1964)). A state law implicates the right to travel when the law actually deters such travel and where deterring travel is the law's primary objective. *State v. Lee*, 135 Wn.2d 369, 389-90, 957 P.2d 741 (1998)

(citing *Zobel v. Williams*, 457 U.S. 55, 102 S. Ct. 2309, 72 L. Ed. 2d 672 (1982)).[3] A state law also implicates the right to travel when the law uses "'any classification which serves to penalize the exercise of that right.'" *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903, 106 S. Ct. 2317, 90 L. Ed. 2d 899 (1986) (internal quotation marks omitted) (quoting *Dunn v Blumstein*, 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972).

A.    *RCW 9A.44.130 Does Not Impair the Constitutional Right To Travel.*

Smith contends that RCW 9A.44.130 impairs his fundamental right to travel because he may be subject to criminal prosecution for leaving his residence for more than three days. He is incorrect.

Nothing within RCW 9A.44.130 prevents Smith from traveling within or outside of the state. *See, e.g., Enquist*, 163 Wn. App. at 50-51 (rejecting claim that RCW 9A.44.130 implicates the right to travel in the context of offender subject to the statute's transient reporting requirements). The statute does not require Smith to provide notice of his intent to travel from his residence. RCW 9A.44.130. Rather, the statute requires Smith to register either his residence address or transient status only when he changes his residence address or when he ceases to have a fixed residence. RCW 9A.44.130(4), (5). And it is well established that the term "residence" as used in RCW 9A.44.130 means "a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit." *State v. Pickett*, 95 Wn. App. 475, 478, 975 P.2d 584 (1999); *see also State v. Jenkins*, 100 Wn. App. 85, 91, 995 P.2d 1268

---

[3] In *Lee*, our Supreme Court treated the right to travel as a component of the right to freedom of movement. 135 Wn.2d at 389-90. Accordingly, the principle that a state law does not implicate the right to travel unless it actually deters travel and unless such deterrence is the law's primary goal applies equally to the right to freedom of movement.

(2000) (applying *Pickett* court's definition of "residence"). Accordingly, RCW 9A.44.130 is not triggered by Smith's travel unless he does not intend to return to his registered address or if he ceases to have a residence address.

Smith has not demonstrated that RCW 9A.44.130 actually deters him from traveling or that the statute penalizes him for exercising his right to travel.[4] Accordingly we hold that the statute does not impair the constitutional right to travel and, thus, Smith cannot show that the statute is unconstitutional either on its face or as applied to him.

B.    *Compelling State Interest*

Even accepting, for the sake of argument, that RCW 9A.44.130 limits convicted sex offenders, such as Smith, of their ability to travel, such limitation is not unconstitutional because it is justified by a compelling state interest in promoting the safety and welfare of Washington citizens.

Laws that limit fundamental rights such as the right to travel and the right to freedom of movement "may be justified only by a compelling state interest." *Enquist*, 163 Wn. App. at 50. The state has a compelling interest in promoting the health, safety, and welfare of its citizens. *State v. Balzer*, 91 Wn. App. 44, 56, 954 P.2d 931 (1998). Thus, where a statute's primary purpose is to promote safety and welfare, we will presume that the statute is constitutional if it "bears a reasonable and substantial relationship to that purpose." *State v. Glas*, 147 Wn.2d 410, 422, 54 P.3d 147 (2002).

---

[4] As will be discussed below, Smith also cannot show that RCW 9A.44.130's primary purpose is to deter travel.

RCW 9A.44.130 serves the State's compelling interest in promoting the safety and welfare of its citizens as it "was enacted to 'assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders'" based on the legislature's finding that "sex offenders often pose a high risk of reoffense." *Enquist*, 163 Wn. App. at 51 (quoting LAWS OF WASHINGTON 1990, ch. 3, § 401); LAWS OF WASHINGTON 1990, ch. 3, § 401 at 49.

Smith contends that, even if justified by a compelling state interest in promoting safety, the registration statute is overbroad because it reaches people who are neither dangerous nor likely to reoffend. In support of this claim, Smith cites to numerous articles that question the "legislative assumption that all people convicted of sex offenses pose a danger to society" and are likely to reoffend. Br. of Appellant at 8. But the contrary conclusions contained in these cited articles are not sufficient to invalidate RCW 9A.44.130 as the constitution does not require legislatures to "have scientific or exact proof of the need for legislation." *J.D.*, 86 Wn. App. at 508 (citing *Ginsberg v. New York*, 390 U.S. 629, 642, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968)). Rather, there need only be an evidentiary nexus between the law's purpose and its effect to demonstrate that the law is narrowly tailored to meet a governmental purpose. *J.D.*, 86 Wn. App. at 508.

Here, the legislature enacted RCW 9A.44.130 upon its finding that sex offenders pose a high risk of reoffense after considering recommendations from the Governor's Task Force on Community Protection and after hearing testimony from representatives of several interested groups, including the Washington Defenders Association, the Washington Coalition of Crime Victims, the Committee for Children, and the Washington Coalition of Sexual Assault Program, to name just a few. *See* S.B. REP. ON ENGROSSED SECOND SUBSTITUTE S.B. 6259, 51st Leg. Reg.

Sess. (Wash. 1990). In light of the legislature's consideration of recommendations by the Governor's Task Force on Community Protection and of the testimony presented by interested groups and concerned citizens, we cannot say that the legislature's finding that sex offenders pose a danger to society is unfounded or that RCW 9A.44.130's registration requirements do not further the State's compelling interest in the safety of citizens of Washington.

Because RCW 9A.44.130 does not impair the constitutional right to travel, Smith fails to demonstrate that the statute is unconstitutional on its face or as applied to him. Further, even assuming that the statute impaired the constitutional right to travel, such impairment is justified by a compelling state interest and, thus, Smith's constitutional challenge to RCW 9A.44.130 fails for this reason as well.

## II. SUFFICIENCY OF THE EVIDENCE

Next, Smith contends that the State failed to present sufficient evidence to support his failure to register as a sex offender conviction. Again, we disagree.

When reviewing the sufficiency of evidence in support of a conviction following a bench trial, we determine whether substantial evidence supports the challenged findings of fact and whether the findings support the trial court's conclusions of law. *State v. Alvarez*, 105 Wn. App. 215, 220, 19 P.3d 485 (2001). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the findings are true. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). A defendant challenging a trial court's finding of fact bears the burden of demonstrating that the finding is not supported by substantial evidence. *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002). A challenge to the sufficiency of evidence in support of a conviction admits the truth of the State's evidence and all reasonable inferences that can be

drawn from it. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). In evaluating the sufficiency of evidence supporting a conviction, "circumstantial evidence is not to be considered any less reliable than direct evidence." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Smith contends that the State did not present sufficient evidence that he failed to comply with the registration requirements of RCW 9A.44.130 because it did not present evidence that he changed his address from a location on Rose Place to the house on 9th Avenue that Lozano found was vacant. Specifically, Smith contends that substantial evidence did not support the trial court's findings that he (1) signed the letter changing his registered address and (2) sent the letter by certified mail, both of which were required to effectively change his residence address by mail under RCW 9A.44.130(4)(a). We disagree.

Although Taff did not specifically testify that the letter received by the sheriff's office was sent by certified mail, she did testify that (1) offenders are required to send letters by certified mail when registering a change of address, (2) she informs all offenders of this requirement, and (3) she changed Smith's registered address upon receipt of the letter sent to the sheriff's office. Taken together and viewed in a light most favorable to the State, the trial court could have reasonably inferred from Taff's testimony that the letter was sent by certified mail. Accordingly, substantial evidence supported the trial court's finding that "the [sheriff's office] received a certified letter from the Defendant." CP at 40.

Substantial evidence also supports the trial court's finding that "[t]he letter was signed by the Defendant." CP at 40. Here, the trial court had before it the change of address letter purportedly containing Smith's signature. The trial court compared that signature with other

10

documents signed by Smith and found that the signatures matched, noting distinctive features in the manner that Smith signed the letter "S". RP at 57. As the trier of fact, it was proper for the trial court to make this comparison to find that the letter was signed by Smith. *See, e.g., Mitchell v. Mitchell*, 24 Wn.2d 701, 704, 166 P.2d 938 (1946).[5] Accordingly, we hold that substantial evidence in the record supported the trial court's challenged findings of fact.

We affirm Smith's conviction for failure to register as a sex offender.

Worswick, P.J.

We concur:

Melnick, J.

Sutton, J.

---

[5] In his reply brief, Smith argues that *Mitchell* is distinguishable from this case because *Mitchell* involved a divorce case where the standard of proof was by a preponderance of the evidence. But Smith fails to show how this is a meaningful distinction. When reviewing the sufficiency of evidence to support a conviction, we evaluate only whether the evidence, viewed in a light most favorable to the State, was sufficient for a trier of fact to find that the State proved beyond a reasonable doubt all of the elements of the offense. That *Mitchell* involved a divorce proceeding where the standard of proof was by a preponderance of the evidence does not undermine the applicability of its holding—that trial courts conducting bench trials are permitted to make signature comparisons—to the facts of this case. Smith also asserts in his reply brief that *Mitchell* is distinguishable because in that case there was testimony that the signature belonged to one of the parties. Again, this is not a meaningful distinction. Here, the letter bearing Smith's purported signature was, itself, sufficient evidence that he had signed the letter. Therefore absent a showing that the trial court improperly admitted the letter as evidence or improperly compared the signature on the letter with Smith's signatures on other documents, issues which Smith does not raise in his appeal, his sufficiency claim fails.